[No. 16563. Department Two. June 2, 1921.]

THE CITY OF BELLINGHAM, *Appellant*, v. BELLINGHAM
PUBLISHING COMPANY, *Respondent*.[1]

NEWSPAPERS (2)—LEGAL PUBLICATIONS—DAILY PAPERS. A news-
paper published every day except Monday is a daily newspaper,
within the requirement of Laws 1921, p. 293, §§ 1, 6, providing that
no newspaper shall be considered a legal newspaper for the publica-
tion of legal notices unless it shall have been published continually,
legal holidays and Sundays excepted, as a daily newspaper.

SAME (2)—CHANGE OF NAME—EFFECT. The change of name of
a newspaper from "The American Reveille" to "The Bellingham
Reveille", not being a change in the identity of the paper, would
not affect the legality of the publication of legal notices under a con-
tract made prior to the change of name.

Appeal from a judgment of the superior court for
Whatcom county, Brown, J., entered May 9, 1921, in
favor of the defendant upon an agreed statement of
facts, in an action to determine the validity of a con-
tract. Affirmed.

*T. D. J. Healy,* for appellant.

*C. W. Howard,* for respondent.

PARKER, C. J.—This cause was presented to the
superior court for Whatcom county for final dis-
position upon the merits, upon an agreed statement of
facts under §§ 378-380, Rem. Code, relating to agreed
cases. The purpose of the action is to have judicially
determined whether or not the city may lawfully avoid,
and treat as no longer binding upon it, a contract
entered into by it with the defendant publishing com-
pany for the publication in its newspaper of the city's
legal notices during the year 1921.

The controversy has arisen because of a change in
the name of the defendant's newspaper, and also be-

[1]Reported in 198 Pac. 369.

3—116 WASH.

cause of the passage of the act of the legislature of 1921, entitled: ''An Act relating to and regulating the publication of legal and other official notices and fixing the fees therefor;'' (Laws of 1921, Ch. 99, p. 293) furnishing, as it is claimed, grounds for the contention that the defendant's newspaper is not, and especially will not be after the going into effect of the act of 1921, which will soon occur, ''a legal newspaper'' for the publication of the city's legal notices. Upon submission of the cause to the superior court, judgment was rendered against the city, holding, in substance, that the defendant's newspaper was, and will continue to be during the whole of the year 1921, if its publication be continued as when this case was commenced, a legal newspaper for the publication of the city's legal notices during the whole of the year 1921. From this disposition of the cause in the superior court, the city has appealed to this court.

The controlling facts may be summarized as follows: Respondent publishing company is, and for several years past has been, a domestic corporation of this state, and the publisher of a daily newspaper, printed and published in the English language, in the city of Bellingham, of general circulation in that city, being published on every day of the week except Monday. Prior to May 1, 1921, respondent's newspaper was named and known as ''The American Reveille,'' the Sunday issue being designated as ''The Sunday American Reveille.'' On May 1, 1921, the name of the paper was changed by respondent to ''The Bellingham Reveille,'' the Sunday edition being designated as ''The Bellingham Sunday Reveille.'' Otherwise, the paper has in all respects been, and will continue to be, printed, published and circulated as now being printed, published and circulated. During the late

session of the legislature, there was passed an act entitled as above quoted, which was approved by the Governor on March 16 and will soon become effective. The following are the only provisions of that act which we need here notice:

"Section 1. No newspaper shall be considered a legal newspaper for the publication of any advertisement, notice, summons, report, proceeding or other official document now or hereafter required by law to be published unless such newspaper shall have been published in the English language continually (legal holidays and Sundays excepted) as a daily or weekly newspaper, as the case may be, in the city or town where the same is published at the time of the publication of such official document, for at least six months prior to the date of such publication, and shall be printed either in whole or in part in an office maintained at the place of publication: . . ." [Laws of 1921, p. 293, § 1.]

"Sec. 6. Where any law or ordinance of any incorporated city or town in this state provides for the publication of any form of notice or advertisement for consecutive days in a daily newspaper, the publication of such notice on legal holidays and Sundays may be omitted without in any manner affecting the legality of such notice or advertisement: *Provided,* That the publication of the required number of notices is complied with." Laws of 1921, p. 295, § 6.

Our principal inquiry seems to be, will respondent's newspaper be "a legal [daily] newspaper" for the publication of the city's legal notices after the going into effect of the act of 1921? The language of § 1 above quoted may seem to lend support to the view that respondent's newspaper will not be a daily legal newspaper after the going into effect of the act, having in view the fact that respondent's newspaper has not been, and will not thereafter be, published on Mondays; from which fact there seems room for arguing

that the paper has not been, and will not be, "published. . . . continually (legal holidays and Sundays excepted) as a daily . . . newspaper . . . for at least six months . . ." We are of the opinion, however, that this language is not intended as a definition of what constitutes a weekly or daily newspaper, speaking generally; but that the only purpose of this language is to define and prescribe the period during which a daily or weekly newspaper shall have been maintained and published regularly as such before it shall be "considered a legal newspaper for the publication of" legal notices. We do not overlook the words, "legal holidays and Sundays excepted," parenthetically embodied in § 1; but those words, we think, mean only that the publication, or failure of publication, of holiday and Sunday issues, shall be ignored in determining whether or not the paper has been regularly and continuously published for six months. If the publication of a paper on every week day, save Monday, makes it a daily paper, such continued publication for a period of six months manifestly makes it a "legal [daily] newspaper for the publication of" legal notices. In *Fairhaven Pub. Co. v. Bellingham,* 51 Wash. 108, 98 Pac. 97, 16 Ann. Cas. 420, the status of the predecessor of this same paper was drawn in question, and in holding that it was in law a daily paper this court said:

"The only question we are required to notice is whether The Morning Reveille is a daily paper, within the meaning of that term as it is used in the city charter. We think it is. The term daily, as applied to the publication of newspapers, is relative. It has never been given the exclusive meaning of every day of the week, month or year, but papers published every day except Sunday, or every day except Monday, or every day except both Sunday and Monday, are re-

garded by the general public as daily papers. This court in *Puget Sound Publishing Co. v. Times Printing Co.*, 33 Wash. 551, 74 Pac. 802, held that a paper published every day except Sunday and legal holidays was a daily paper, and cited approvingly a case from California which held that a paper published every day except Monday was such a paper. A paper omitting both days may be less a daily publication than either of these cited instances, but it is not so widely different from them as to require it to be put into a distinct class. It is a daily paper in the popular sense, and it was in this sense that the term was used in the city charter.''

Nor do we think that § 6 of the  act argues to the contrary of our conclusion. That section manifestly was embodied in the act merely for the purpose of enabling the publication of legal notices to be omitted from holiday and Sunday issues of newspapers, *"Provided,* That the publication of the required number of notices is complied with;'' that is, that the publication of a notice daily for the required number of consecutive days, omitting holiday and Sunday issues, will be regarded as a consecutive daily publication of such notice.

Does the  change of the name of respondent's newspaper render it a different newspaper from its predecessor in name, during the six months next following such change in name? We are quite convinced that the mere change of the name from ''The American Reveille'' to ''The Bellingham  Reveille,'' in view of the other conceded facts shown by this record, is not a change in the identity of the paper; and that being our conclusion, it follows that such change of name has not affected, and will not affect, the legality of the publication of the city's legal notices therein during any portion of the year 1921; assuming, of course, that the paper will be continued to be printed

and published as printed and published at the time
of the commencement of this action.

The judgment is affirmed.

MITCHELL, MACKINTOSH, MAIN, and TOLMAN, JJ.,
concur.